IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLINTON HITNER,** | : | CIVIL ACTION NO. 1:18-CV-2008 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **CORRECTIONS OFFICER ALSHEFSKI,** *et al.*, | : | |
| | : | |
| Defendants | : | |

## **MEMORANDUM**

Plaintiff Clinton Hitner ("Hitner"), an inmate who was housed at all relevant times at the State Correctional Institution, Frackville, Pennsylvania ("SCI-Frackville"), commenced this action pursuant to 42 U.S.C. § 1983 asserting that defendants denied him access to the courts in violation of his First and Fourteenth Amendment rights. (Doc. 1). Named as defendants are corrections officer Alshefski, corrections officer Berger, and captain Downs. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 65). For the reasons set forth below, the court will grant defendants' motion.

I.     **Factual Background & Procedural History**[1]

On March 20, 2017, Hitner was in the visiting room at SCI-Frackville spending time with his family members. (Doc. 1 ¶ 7). While in the visiting room, Hitner asserts that defendants Alshefski and Berger searched his cell, removed his personal property, transported his property to the security department for inspection, and misplaced his legal documents. (Id. at ¶¶ 8-13). Hitner contends that defendants denied him access to the courts by misplacing his legal materials. (Id. at ¶¶ 14-20).

On August 2, 2019, defendants conducted the deposition of Hitner regarding the events relevant to this civil action. (Doc. 67-1, Deposition of Clinton Hitner ("Hitner Dep.")). Hitner testified that, "they came to my cell [while] I was on a visit." (Doc. 66, Statement of Material Facts, ¶ 1; Doc. 79, Counterstatement of Material Facts, ¶ 1; Hitner Dep. 13:10, 21-22). He testified that when he came back from his visit, "my TV . . . was basically torn – all of my property was missing." (Doc. 66 ¶ 2; Doc. 79 ¶ 2; Hitner Dep. 14:8-10). Hitner later learned that correctional officers were dispatched to his housing unit and took his property. (Doc. 66 ¶ 3; Doc. 79 ¶ 3; Hitner Dep. 14:12-14).

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Hitner does not dispute defendants' statement of material facts. (See Doc. 79). Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 66, 79).

Hitner was not present when his property was searched and was not given a confiscation slip for his property. (Doc. 66 ¶¶ 4-5; Doc. 79 ¶¶ 4-5; Hitner Dep. 17:5-9, 23:7-11). Hitner was subsequently called to the security office to retrieve his property. (Doc. 66 ¶ 6; Doc. 79 ¶ 6; Hitner Dep. 21:10-13). He does not remember who was present to return his property to him at the security office. (Id.) All of Hitner's property was returned to him, except his legal documents. (Doc. 66 ¶¶ 7-8; Doc. 79 ¶¶ 7-8; Hitner Dep. 19:5-6; 19:21-23). When asked whether Hitner thought that his legal materials were accidentally misplaced, Hitner responded: "I'm not going to rule that out." (Hitner Dep. 21:19-21).

Hitner testified that captain Downs ordered correctional officers Alshefski and Berger to take his property from his cell and transport it to the security office to be searched. (Doc. 66 ¶¶ 9-11; Doc. 79 ¶¶ 9-11; Hitner Dep. 22:13-24:1). Hitner believes that Alshefski and Berger conducted the actual search of his property and lost his paperwork, and that Downs ordered the confiscation of his property. (Hitner Dep. 23:21-24:22).

Hitner was never issued a "write-up" with respect to the confiscated items. (Doc. 66 ¶ 13; Doc. 79 ¶ 13; Hitner Dep. 24:10-11). Hitner believes that captain Downs violated policy by ordering the seizure of his property when he was not present, without providing notice, and without giving him a chance to sign off. (Doc. 66 ¶ 14; Doc. 79 ¶ 14; Hitner Dep. Hitner 25:4-9; 10-12). He also believes that captain Downs violated policy by ordering Alshefski and Berger to search his cell. (Id.)

Hitner is uncertain if defendants knew that he was filing documents in his underlying criminal proceeding when they confiscated his property. (Doc. 66 ¶ 15; Doc. 79 ¶ 15; Hitner Dep. 27:6-10). Hitner assumes that defendants learned about the filings in his criminal proceeding after he filed a grievance about the matter. (Id.)

Discovery has concluded, and defendants now move for summary judgment. The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

4

### III. Discussion

#### A. Fourteenth Amendment Claim

Hitner's substantive due process claim is duplicative of his First Amendment retaliation claim and is barred by the "more specific provision rule." In adopting the "more-specific-provision-rule" established in County of Sacramento v. Lewis, 523 U.S. 833, 843-44 (1998), the Third Circuit noted that "[u]nder this rule, 'if a constitutional claim is covered by a specific constitutional provision . . . , the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' United States v. Lanier, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (clarifying prior holing in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))." Betts v. New Castle Youth Development Center, 621 F.3d 249, 260-61 (3d Cir. 2010). Hitner's First Amendment claim is identical to his Fourteenth Amendment due process claim. Both are based on defendants' interference with his access to the courts. Hitner's access to the courts claim is covered by a specific constitutional provision—the First Amendment—and this claim must be analyzed under the "more specific provision."

#### B. First Amendment Access to Courts Claim

Hitner asserts that defendants denied him access to the courts by misplacing his legal materials. (Doc. 1). In Bounds v. Smith, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's limited right of access to the courts. Prisoners are not necessarily "capable of filing everything" but have a right of access to "attack their sentences, directly or collaterally, and in order to challenge the conditions of

5

their confinement." Lewis v. Casey, 518 U.S. 343, 355 (1996). "The right of access to the courts must be adequate, effective and meaningful and must be freely exercisable without hindrance or fear of retaliation." Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir. 1981) (internal citations omitted). Following Lewis, courts have consistently recognized that such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. See Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997). An inmate must demonstrate "(1) that they suffered an actual injury—that they lost a chance to pursue a non-frivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)) (internal quotations omitted).

Hitner states that his missing legal materials hindered his ability to file a brief seeking DNA testing in his underlying criminal case. The missing legal documents consisted of state court transcripts, court orders, and motions. (Hitner Dep. 20:24-21:4). However, Hitner has not asserted that he actually missed any deadlines. *In fact, the docket sheets for his state court criminal action reveal that Hitner filed his appeal brief approximately two months before he lost his legal documents at SCI-Frackville.* An examination of the state court records reveals the following. (See Docs. 67-6, 67-7, 67-8).

On or about April 18, 2016, Hitner filed a petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), seeking DNA testing. (Doc. 67-6, Bucks Cnty. Docket Sheet, Criminal No. CP-09-CR-0002015-2004). On July 7, 2016, the PCRA court denied the motion for post-conviction DNA testing. (Id.) On July 28, 2016, Hitner filed an appeal to the Pennsylvania Superior Court. (Doc. 67-7, Pennsylvania Superior Court Docket Sheet, No. 2719 EDA 2016). On January 12, 2017, Hitner filed a brief in support of his appeal. (Id.) On May 19, 2017, the Superior Court affirmed the PCRA court's denial of the petition. (Id.) On June 15, 2017, Hitner filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on December 13, 2017. (Doc. 67-8, Pennsylvania Supreme Court Docket Sheet, No. 479 MAL 2017).

Hitner's legal documents went missing at SCI-Frackville in March 2017. (Hitner Dep. 13:2-6). The undisputed evidence establishes that Hitner filed his Pennsylvania Superior Court appeal brief in January 2017, *prior* to losing his documents at SCI-Frackville. To the extent that Hitner believes he was unable to sufficiently prepare his appeal to the Pennsylvania Supreme Court, his mere "hope" that he would have been able to adequately perfect his appeal if he obtained the missing legal documents is insufficient to meet the actual injury requirement. (Hitner Dep. 30:23-31:2). Notably, Hitner does not state that the state courts dismissed any of his filings for failure to file any briefs. Indeed, it is clear that Hitner was able to make several filings from prison, and that they were received and docketed by the state courts.

7

Further, Hitner has not established that he was prevented from pursuing a nonfrivolous challenge to his conviction, especially in light of the state courts' conclusions that "Hitner has not provided any facts alleging what DNA evidence could possibly be discovered that would establish his innocence." Commonwealth v. Hitner, 2017 WL 2211392, *2-3 (Pa. Super. 2017) (citing PCRA Court Opinion, 11/18/16). Because Hitner failed to establish a basis for a legitimate challenge to his conviction, he has not established that he was denied access to the courts. See Bowens v. Matthews, 2019 WL 1461537, at *2 (3d Cir. 2019) ("To the extent that Bowens described his PCRA claim at all, he did not describe it well enough to show that it is 'nonfrivolous' or 'arguable.'"); Monroe, 536 F.3d at 206 (plaintiffs' allegations that "defendants confiscated their legal materials" and that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim).

In failing to establish actual injury or some legal loss, Hitner fails to demonstrate that defendants' conduct imposed a substantial impact on him. See Monroe, 536 F.3d at 205-06 (stating that the complainant in an access to the courts claim "must describe the underlying arguable claim well enough to show that it is 'more than mere hope', and it must describe the 'lost remedy.'") (citation omitted). Consequently, defendants are entitled to summary judgment on the access to courts claim.

### C. Claims Against Defendant Downs

Hitner asserts that defendant Downs ordered Alshefski and Berger to search his cell and did not follow prison policy, thereby violating his rights. (Hitner Dep. 25:4-12).

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

It is clear that Hitner attempts to hold defendant Downs liable based on his supervisory role. Hitner testified that he "believe[d] . . . [that captain Downs] ordered Berger and Olshefski, gave them an order [to confiscate his property]." (Hitner Dep. 25:4-12). It is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat*

*superior*.  See Rode, 845 F.2d at 1207.  Accordingly, to the extent that Hitner's claims against defendant Downs relies on a *respondeat superior* theory of liability, defendant Downs is entitled to judgment in his favor on this claim.

Hitner also appears to assert liability based on defendant Downs' violation of prison policy.  (Hitner Dep. 25:4-12).  However, a violation of an internal prison policy does not automatically rise to the level of a constitutional violation.  "[A] prison policy manual does not have the force of law and does not rise to the level of a constitutional violation."  Atwell v. Lavan, 557 F.Supp.2d 532, 556, n. 24 (M.D. Pa. 2008) (citing Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004)).  The Third Circuit has clearly stated that "agency interpretive guidelines 'do not rise to the level of a regulation and do not have the effect of law.'"  Mercy Catholic Med. Ctr., 380 F.3d at 155 (citation omitted).  Therefore, defendant Downs cannot be liable simply for violating a prison policy and defendants' motion will be granted as to this claim.  See Estrella v. Hogsten, 2007 WL 2065879 (M.D. Pa. July 16, 2007) (holding that mere failure of prison officials to follow their own regulations alone is not a constitutional violation).

### D. Qualified Immunity

Even if Hitner had stated a colorable access to the courts claim, defendants are nevertheless entitled to qualified immunity from this claim for damages.  In order to establish a civil rights claim, Hitner must show the deprivation of a right secured by the United States Constitution or the laws of the United States.  However, government officials performing "discretionary functions," are insulated

from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled

in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).  As stated, the court finds that Hitner failed to establish the violation of a constitutional right. Defendants could not have recognized that their actions of routinely searching inmate property would violate "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson, 526 U.S. at 609. Therefore, defendants are protected from liability by qualified immunity.

## IV.    Conclusion

We will grant defendants' motion (Doc. 65) and enter summary judgment in their favor.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:       June 18, 2020